

THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| | | |
|---|---|---|
| In re: | * | Case No.   12-12090-TJC |
| Maria L. Mejia | * | Chapter   7 |
|     Debtor | * | |
| * * * * * * * | | |
| Maria L. Mejia | * | |
|     Plaintiff | * | |
| vs. | * | Adversary No.   13-00501 |
| Partners for Payment Relief LLC, *et al.* | * | |
|     Defendants | * | |
| * * * * * * * * * * * * * * | | |

## MEMORANDUM OF DECISION

The plaintiff and debtor, Maria L. Mejia, brings this adversary proceeding against defendants Partners for Payment Relief LLC ("PPR") and Partners for Payment Relief DE III LLC ("DE III") (collectively, the "Defendants"), alleging they sought to coerce the Plaintiff into paying her discharged loan in violation of the discharge injunction of 11 U.S.C. §524(a). The parties filed cross-motions for summary judgment on liability. ECF 82, 84. The court granted the Plaintiff's motion in part, finding that DE III violated the discharge injunction by requiring the Plaintiff to reaffirm and reinstate her discharged second deed of trust loan as a condition to remain in her home after DE III foreclosed. *See* ECF 100, 101. At the time, the amount of the

1

first deed of trust loan exceeded the value of the home, thus rendering valueless the discharged second deed of trust loan held by DE III. The court denied the remaining relief requested by the Plaintiff and denied the Defendants' cross-motion for summary judgment.

The court held a trial on whether the Defendants committed other alleged violations of the discharge injunction and what damages would be assessed for any violations. For the reasons below, the court concludes that the Plaintiff has not established any further violations of the discharge injunction. For damages for the violation determined on summary judgment, the court awards the Plaintiff $2,080 in compensatory damages and $25,000 in punitive damages, plus attorney's fees to be determined.

## Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. §§1334 and 157(b) and Local Rule 402 of the United States District Court for the District of Maryland. The court has authority to enter final judgment in this matter under 28 U.S.C. §157(b)(2) and consistent with the standards of *Stern v. Marshall*, 564 U.S. 462 (2011).

## Findings of Fact

The facts of this case were discussed at length in this court's memorandum of decision granting the Plaintiff's motion for summary judgment. *See* ECF 100.

In September 2005, the Plaintiff purchased her home at 262 W. Deer Park Road, Gaithersburg, Maryland (the "Property") for $284,000. The Plaintiff financed the purchase by entering into a first deed of trust loan with Countrywide Home Loans. She also entered into a second deed of trust loan—the loan at issue here—with Intervale Mortgage Corporation for $49,650 (the "Loan").

On October 12, 2011, DE III acquired the Loan for $2,880.92. At that time, the Loan had an outstanding balance of $48,912.12. The Defendants are in the business of purchasing non-performing deed of trust notes at a discount and attempting to turn them into performing notes. In general, the Defendants do not wish to foreclose on the real property that secures the loan. Instead, they seek to have the defaulting homeowners pay the mortgage loan. The Defendants engage in a number of activities in an attempt to collect the loans. If the defaulting homeowners refuse to respond or negotiate a payment plan with the Defendants, they leverage the foreclosure and eviction process in an effort to get the homeowners to start paying on the note. Between October 2011 and December 2012, DE III attempted to contact the Plaintiff several times for the purpose of reviewing debt repayment options. DE III issued a Notice of Intent to Foreclose on January 20, 2012.

In response to the foreclosure action, the Plaintiff filed a petition for Chapter 7 relief on February 8, 2012. She received a discharge on May 16, 2012. DE III received notice of the bankruptcy case and notice of the Plaintiff's discharge.

DE III renewed foreclosure proceedings against the Property in December 2012. The foreclosure sale occurred on February 27, 2013, where DE III purchased the Property for $19,000, subject to the first deed of trust lien. The deadline for filing exceptions to the sale was April 17, 2013. The Plaintiff did not file any exceptions, and the Circuit Court ratified the sale on April 22, 2013.

On May 6, 2013, DE III filed a motion seeking possession of the Property. The Circuit Court entered a judgment of possession in favor of DE III on June 24, 2013. On July 2, 2013, DE III issued a notice of eviction, and a Montgomery County sheriff served the Plaintiff with an order of eviction on July 20, 2013.

The Plaintiff's Schedule B listed the value of the Property as $183,600. Case No. 12-12090 at ECF 1 at p. 8. On Schedule D, the first deed of trust loan was listed as $261,254, and the Loan was $48,912. *Id*. at p. 13.

The Defendants do not dispute that the value of the Property and the amount of the first deed of trust loan at the time of the foreclosure sale were more or less the amounts stated by the Plaintiff in her schedules. Accordingly, at the time of the foreclosure sale, the amount outstanding on the first deed of trust loan was substantially greater than the value of the Property, thereby rendering the Loan wholly unsecured.

On July 22, 2013, the Plaintiff filed an emergency motion to stay the eviction and set aside the foreclosure. The Circuit Court denied the motion. On July 24, 2013, the Plaintiff called DE III's attorney, Cindy Diamond, seeking options to stop the eviction. Ms. Diamond stated that the Plaintiff called asking how she could stop the eviction and explaining that she wished to remain in the Property. Ms. Diamond directed the Plaintiff to reach out to DE III to work out an agreement.

On July 25, 2013, Barbara Faust, a workout specialist for DE III, sent the Plaintiff a hand-written note offering to work out an agreement to keep the Plaintiff in her home. The note requested the Plaintiff call DE III, which she did. On July 29, 2013, the Plaintiff spoke with Patricia Cruz Gonzalez, a Spanish-speaking workout specialist, who explained that the eviction process would cease if the Plaintiff would agree to a workout agreement. The next day, DE III sent the Plaintiff a proposed agreement (the "Agreement").

The Agreement, written in English, included a hand-written note in Spanish asking the Plaintiff to sign the Agreement, have it notarized, and return it with a copy of her driver's

4

license.[1]  Under the terms of the Agreement, DE III was to modify the Loan provided that the Plaintiff made monthly installment payments of $471.25 per month over thirty years.  In addition, the Agreement required the Plaintiff to make a one-time "arrears payment" on the Loan of $3,000.  In total, the Agreement would have obligated the Plaintiff to pay $81,600, which was $5,454.04 more than the original payoff balance under the Loan.[2]  If the Plaintiff failed to meet her obligation under the Agreement, DE III would "take such actions as it deems appropriate . . . [including] to enforce any and all other rights then existing under the terms of the [Loan] . . . ." ECF 82-20 at ¶7.  The Plaintiff did not sign the Agreement.

On August 20, 2013, the Plaintiff filed a motion to reopen her Chapter 7 case and for contempt sanctions, and filed an emergency motion for a temporary restraining order enjoining the Plaintiff's eviction.  Case No. 12-12090 at ECF 21, 22.  On August 22, 2013, the court granted the motion to reopen (*id.* at ECF 28), and on August 23, 2013, the court issued a temporary restraining order enjoining the Defendants from evicting the Plaintiff, taking any additional action to foreclose upon her home, or making any additional efforts to collect upon the Loan.  *Id.* at ECF 33.  DE III subsequently re-conveyed the Property back to the Plaintiff.

After the close of discovery, the Defendants and the Plaintiff filed cross-motions for summary judgment.  ECF 82 and 84.  On September 30, 2016, the court granted summary judgment to the Plaintiff on the liability of DE III for its attempt to coerce the Plaintiff into reaffirming her discharged debt.  ECF 101.

The Plaintiff also filed a motion to amend the complaint to add as defendants PPR Note Co., Dave Van Horn, John Sweeney, Bob Paulus, and Cindy Diamond.  ECF 80.  The court

---

[1] The pertinent terms of the Agreement is described in the court's memorandum of decision granting summary judgment.  ECF 100 at pp. 6-9.
[2] The Agreement stated that the "Payoff Balance" on the Loan was $76,145.96, while the restructured and restated amount was $78,600 plus the $3,000 arrears payment, for a total of $81,600.  ECF 82-20 at ¶¶3-4.

5

granted the motion as to PPR Note Co. only.  ECF 120.  However, the Plaintiff did not amend the complaint to add PPR Note Co.

**Analysis**

At trial, the Plaintiff argued that the Defendants' actions in initiating and completing foreclosure on the Property and seeking to evict her were an attempt to coerce her into paying the discharged loan as a personal liability.  She asserted that this improper use of the Defendants' foreclosure and eviction rights violated 11 U.S.C. §524(a), in addition to the violation determined by the court on summary judgment.[3]

*The Discharge Injunction*

Section 524(a)(2) provides that "[a] discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." §524(a)(2).  While §524(a) does not expressly provide a remedy for a violation of the statutory injunction, the federal courts have uniformly held that bankruptcy courts have authority under §105(a) to enforce §524(a) through contempt proceedings.  *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306-07 (10th Cir. 2008) (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506–07 (9th Cir. 2002)); *Insurance Co. of N. Am. v. NGC Settlement Trust of Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1063 (5th Cir. 1997); *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996).  A plaintiff must prove a violation of the discharge injunction by clear and convincing evidence.  *See Flint v. W. Va. State Tax Dep't (In re Flint)*, 557 B.R. 461, 465 (Bankr. N.D.W. Va. 2016) (citing *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

---

[3] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq.*, as currently in effect.

To hold a creditor in contempt for violating §524(a), a court must conclude that the discharge violation was "willful." Courts define "willful" to mean that (1) the creditor knew that the debt in question had been discharged in bankruptcy; and (2) the creditor intended the actions that violated the discharge injunction. *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006); *In re Hardy*, 97 F.3d at 1390; *In re Tucker*, 526 B.R. 616 (Bankr. W.D. Va. 2015).

Typically a creditor may exercise its *in rem* rights against property without implicating the protections of the discharge injunction. 4 Collier on Bankruptcy ¶524.02 (16th ed. 2018); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). "Notwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis à vis a discharged debtor, a violation of §524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to coerce or harass the debtor improperly i.e., so as to obtain payment of the discharged debt." *In re Paul,* 534 F.3d at 1308 (citation and internal quotation marks omitted); *see also Pratt v. GMAC (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006) ("even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts."). "An action is coercive where it is 'tantamount to a threat,' . . . or places the debtor 'between a rock and hard place' in which he would lose either way." *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6-7 (B.A.P. 1st 2009) (quoting *Jamo v. Katahdin Fed. Credit Union*, 283 F.3d 392, 402 (1st Cir. 2002)).

Therefore, "[e]ven if a creditor threatens only to enforce its surviving lien, that threat will violate the discharge injunction if the evidence shows that the threat is really an effort to coerce payment of the underlying discharged debt." 4 Collier on Bankruptcy ¶524.02(2)(a). In such a

circumstance, "[t]he absence of any other reason for a creditor's act other than coercion is circumstantial evidence of the creditor's motives." *Id.*

The Plaintiff asserted at trial that the Defendants violated the discharge injunction by sending letters and placing phone calls to the Plaintiff for the purpose of collecting on the Loan; foreclosing on the Property and attempting to evict the Plaintiff; and asserting debt for post-petition interest in the foreclosure action. In denying the Plaintiff's motion for summary judgment on these claims, the court stated:

> These broader claims of violating the discharge injunction are not susceptible of resolution on summary judgment. Although the court can infer defendants' purpose and objectives from general statements of their business practices, the determination of defendants' purpose and objectives for contacting plaintiff, conducting the foreclosure sale, and initiating eviction proceedings *in this case requires resolution of facts, and perhaps credibility determinations of witnesses, that cannot be resolved here.*

*Mejia v. Partners for Payment Relief LLC (In re Mejia)*, 559 B.R. 431, 444 (Bankr. D. Md. 2016) (emphasis added). Despite this clear statement, the Plaintiff did not present any new facts, evidence, or testimony on these issues at trial. Accordingly, the court must reject the claim that additional violations occurred.

## Damages

Although the Bankruptcy Code provides for specific remedies for a violation of the automatic stay §362(k),[4] there is no similar provision providing what damages may be assessed against a creditor who willfully violates the discharge injunction. However, courts widely agree that under §105(a), bankruptcy courts have the authority to impose civil sanctions for a creditor's willful violation of the discharge injunction. *Mooney v. Green Tree Serv., LLC (In re Mooney)*,

---

[4] Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

8

340 B.R. 351, 360 (Bankr. E.D. Tex. 2006); *see also Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 186-87 (Bankr. E.D. Va. 2000). "These sanctions may include actual damages, attorney's fees and, when appropriate, punitive damages." *In re Cherry*, 247 B.R. at 186-87.

### *Compensatory Damages*

Compensatory damages are those damages that were actually incurred by the debtor. *In re Banks*, 577 B.R. 659, 668 (Bankr. E.D. Va. 2017). Such damages are broadly construed to include damages for lost time, out-of-pocket expenses, emotional damages, and attorney's fees. *In re Banks*, 577 B.R. at 668 (citing *Ojiegbe v. Walter (In re Ojiegbe)*, 539 B.R. 474, 479 (Bankr. D. Md. 2015)). To recover actual damages, a debtor must establish by a preponderance of the evidence that a willful violation occurred, that damages were suffered, and that the amount of relief requested is appropriate.

In the order granting summary judgment to the Plaintiff, the court determined that DE III violated the discharge injunction by attempting to reaffirm a discharged debt. The primary harm to the Plaintiff as a result of DE III's actions was the loss of title to her home. After the Plaintiff initiated this adversary proceeding, DE III reconveyed the Property back to the Plaintiff. However, this alone does not account for the Plaintiff's other losses.

In total, the Plaintiff seeks $2,080 in compensatory damages incurred as a result of the foreclosure. Specifically, she seeks $322 for storage rental, $960 for moving and packing assistance, $200 for a moving truck rental, and $600 for laborers. The court accepts the Plaintiff actually incurred these damages and the amount requested is reasonable. Accordingly, the court will enter judgment in favor of the Plaintiff in the amount of $2,080.

### *Punitive Damages*

9

The majority of courts that have addressed the issue have allowed punitive damages for willful violations of the discharge injunction. *In re Mooney*, 340 B.R. at 361; *In re Cherry*, 247 B.R. at 189; *In re Arnold*, 206 B.R. 560, 567 (Bankr. N.D. Ala. 1997). "Unlike compensatory damages, punitive damages serve the same purpose as criminal penalties: to punish a party for their wrongful conduct and to deter further conduct of that same nature." *In re Perviz*, 302 B.R. 357, 372 (Bankr. N.D. Ohio 2003) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986)).

The Fourth Circuit has yet to address the appropriate standard for assessing punitive damages for violations of the discharge injunction. Bankruptcy courts around the country have adopted several approaches to answering this question. Some courts assess punitive damages where the creditor's actions are egregious, malevolent, or a clear disregard of bankruptcy laws. *Boyd v. New Peoples Bank, Inc. (In re Boyd)*, 562 B.R. 324, 330 (Bankr. W.D. Va. 2016) (citing *Workman v. GMAC Mortg. LLC (In re Workman)*, 392 B.R. 189, 196 (Bankr. D.S.C. 2007)); *In re Cherry*, 247 B.R. at 190. Other courts use "maliciousness or bad faith" as the guide. *HSBC Bank USA v. Crawford (In re Crawford)*, 476 B.R. 83, 87 (S.D.N.Y. 2012) (citing *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990)) (discussed in the context of punitive damages for automatic stay violations).

Another collection of courts consider whether "arrogant defiance of federal law" existed at the time of the violation. *In re Panek*, 402 B.R. 71, 77 (Bankr. D. Mass. 2009) (citing *Curtis v. LaSalle Nat'l Bank (In re Curtis)*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005)). Still other courts utilize a multi-factor standard and consider: "(1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motives of the defendant; and (4) any provocation by the debtor." *Heghmann v. Indorf (In re Heghmann),* 316 B.R. 395, 405 (1st Cir. BAP 2004);

*Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) (citing *Nigro v. Oxford Dev. Co. (In re M.J. Shoearama, Inc.),* 137 B.R. 182, 190 (Bankr. W.D. Pa.1992)).[5]

Regardless of the standard applied, all of the tests share a common denominator and that is that "punitive damages usually require more than mere willful violation of the [discharge injunction]." *Green Tree Servicing, LLC v. Taylor (In re Taylor)*, 369 B.R. 282, 289 (S.D. W. Va. 2007) (discussed in the context of punitive damages for automatic stay violations); *see also In re Boyd*, 562 B.R. at 330 ("[W]hether expressed as 'egregious conduct,' 'malevolent intent,' or 'clear disregard of the bankruptcy laws,' each of these decisions [awarding punitive damages] appear to employ the finding of creditor conduct beyond willfulness or deliberation and more closely resembling a specific intent to violate the discharge injunction in order to assess punitive damages.") (quoting *In re Cherry*, 247 B.R. at 190).

Here, there can be no question that DE III went well beyond a mere willful violation of the discharge injunction. As explained in this court's memorandum of decision granting summary judgment to the Plaintiff, "[t]he unambiguous language of the Agreement establishe[d] that it was an effort by DE III to have plaintiff reaffirm the discharged debt." *In re Mejia*, 559 B.R. at 441. If signed, the Agreement would have had personally obligated the Plaintiff to repay $80,000 of the discharged debt over a 30-year period, including an "arrears payment" of $3,000.

At the time DE III sought to enter the Agreement with the Plaintiff, it was fully aware of the Plaintiff's bankruptcy case and subsequent discharge. Despite the Loan's valueless state, DE III had exercised its *in rem* rights by foreclosing on the Property subject to the first deed of trust loan. It is apparent that DE III had no intention—or reason, for that matter—to take possession

---

[5] These cases discuss punitive damages in the context of automatic stay violations.

of the Property because the amount of the first deed of trust loan exceeded its value. DE III's only source for recovery was to coerce Plaintiff into personally paying the Loan. Following the discharge, DE III no longer held *in personam* rights against the Plaintiff yet its attempt to subject the Plaintiff to personal liability essentially sought to vitiate the benefit of the discharge. Accordingly, it is appropriate to award punitive damages for the violation of the discharge injunction.

Courts are granted great discretion in determining the amount awarded as punitive damages for violations of the discharge injunction. *In re Banks*, 577 B.R. 659, 669 (Bankr. E.D. Va. 2017). A punitive damage award has twin aims of deterrence and retribution. *In re Banks*, 577 B.R. at 669 (citing *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001)). Therefore, an award should be set to a level sufficient to punish the defendant for its bad act and to deter similar conduct in the future. *Id.*

A court assessing a punitive damage award is tasked with weighing facts and circumstances surrounding the defendant's misconduct in each particular case. *In re Banks*, 577 B.R. at 669. The court may consider factors such as "the nature of the creditor's conduct, the degree of contempt shown for adherence to the law, the nature and extent of harm to the debtor, and the creditor's ability to pay." *Id.* (citing *Wills v. Heritage Bank (In re Wills)*, 226 B.R. 369, 376 (Bankr. E.D. Va. 1998)). "[A] defendant's policies, practice and procedures, and its efforts to assure that its conduct complies with the requirements of law" may also be considered. *Henry v. Assocs. Home Equity Servs. (In re Henry)*, 266 B.R. 457, 482 (Bankr. C.D. Cal. 2001) (citing *In re Novak*, 223 B.R. 363, 368 (Bankr. M.D. Fla. 1997)).

In setting the amount of the award, the court is cognizant of the standards set out by the United States Supreme Court in *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996). The Court in

*BMW* set out three guideposts in determining what is constitutionally permissible: "(1) the degree of reprehensibility of the violator's conduct; (2) the disparity between the harm or potential harm suffered by the debtor and the punitive damages awarded; and (3) the difference between the award granted and the civil penalties imposed in similar cases." *In re WVF Acquisition, LLC*, 420 B.R. 902, 915 (Bankr. S.D. Fla. 2009) (citing *BMW*, 517 U.S. at 574-75). Of these guideposts, "the degree of reprehensibility of the defendant's conduct" is the "most important indicium of the reasonableness of a punitive damages award." *BMW*, 517 U.S. at 574.

The Supreme Court also has consistently rejected a pure mathematical formula for determining the proper amount of punitive damages. *See*, *e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501 (2008); *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 424-25 (2003); *BMW*, 517 U.S. at 582. And while the Court has held that "few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process," *State Farm,* 538 U.S. at 425, it has plainly stated that higher ratio awards "may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages." *Id.*; *see also BMW*, 517 U.S. at 582.

Weighing all of the above factors, the court finds that $25,000 to be the appropriate award. DE III's conduct in this case was especially egregious. It is uncontested that DE III was well aware of the bankruptcy filing and the Chapter 7 discharge. While DE III had the legal right to exercise its *in rem* rights by foreclosing on the Property and seeking possession of the Property, both its actions and the economic realities of the transaction establish that its intent was to coerce the Plaintiff into personally paying the Loan.

The Plaintiff introduced evidence that established that DE III's actions in this case were consistent with Defendants' business plan. DE III acquired second mortgage loans for pennies

on the dollar because the amount of the first mortgage equaled or exceeded the value of the collateral, thus rendering the second mortgage of little value.  DE III then leveraged the borrowers' desire to stay in their homes by coercing them to reaffirm the balance of valueless secured loans through the threat of foreclosure or eviction following foreclosure.  The business plan dictates that DE III had little interest in foreclosing on the collateral for the loans.  In fact, instances where DE III was required to foreclose were described as failures.  The valueless lien is simply used as a tool of coercion to collect amounts vastly in excess of the economic value of the discharged loans.

The court need not consider whether this business model is appropriate in instances where the borrower has not received a discharge in bankruptcy.  Here, the Plaintiff received a discharge and had no personal liability to pay the Loan.  DE III's effort to coerce the Plaintiff to reaffirm the discharged loan under threat of eviction, where the Property is wholly underwater and DE III had no interest in exercising ownership rights over it, plainly violates the discharge injunction.  Thus, in design and practice, the business plan violates the discharge injunction.

The punitive damages awarded here—$25,000—is appropriate in comparison to the actual loss sustained by the Plaintiff when DE III foreclosed on the Property and took title to her home.  While such a loss is difficult to quantify, particularly when the Loan had no practical value because the first mortgage exceeded the value of the Property, there can be no doubt that it is significant.

Although the court finds that a punitive damage award is appropriate, mitigating factors do exist that the court has considered in setting the amount of its award.  The court notes that following the initiating of this litigation DE III almost immediately deeded back the Property free and clear of its lien.  While the Plaintiff argues that the reconveyance of the Property is a

tacit admission of wrongdoing, it is also a showing of DE III's effort to rectify immediately the harm caused to the Plaintiff.  Further, at trial, PPR presented evidence that it has changed its policies and procedures for handling accounts of borrowers who are debtors in bankruptcy or who have been through bankruptcy.  Specifically, it retained a business consultant to review and revise its compliance policy and it established revised procedures for training all staff.  PPR's policy changes suggest its acknowledgment of its inappropriate actions and intention to avoid similar conduct in the future.  These factors weigh in favor of lessening the punitive damage award, but do not completely alleviate the need to punish for the actions taken in this case.

   The court finds the approximately 12:1 ratio here appropriate.  The actual damages incurred by the Plaintiff are relatively minor at just over $2,000.  It is the court's opinion that a lesser award would not serve the goal of punishing DE III and deterring similar conduct in the future, but a greater award would not acknowledge the Defendants' mitigation efforts described above.  A review of punitive damage awards in similar cases finds the amount and ratio to be well within the norms of awards in similar cases.  *See e.g., In re Banks*, 577 B.R. 659 (Bankr. E.D. Va. 2017) (1.15:1 ratio; $5,000 punitive damage award); *Achterberg v. Creditors Trade Ass'n (In re Achterberg)*, 573 B.R. 819 (Bankr. E.D. Cal. 2017) (5:1; $15,000); *Fauser v. Green Tree Servicing, LLC (In re Fauser)*, 545 B.R. 907 (Bankr. S.D. Tex. 2016) (2.5:1; $4,500); *In re Haemmerle*, 529 B.R. 17 (Bankr. E.D.N.Y. 2015) (compensatory damages not awarded; $69,500 punitive damage award); *In re WVF Acquisition, LLC*, 420 B.R. 902 (1:1; $50,000); *DiGeronimo v. Weissberg (In re DiGeronimo)*, 354 B.R. 625 (Bankr. E.D.N.Y. 2006) (2:1; $2,500); *In re Mooney*, 340 B.R. 351 (2:1; $40,000); *In re Curtis*, 322 B.R. 470 (2:1; $30,000); *In re Henry*, 266 B.R. 457 (27:1; $65,000); *In re Vazquez*, 221 B.R. 222 (10:1; $10,000); *Diviney v. NationsBank, N.A. (In re Diviney)*, 225 B.R. 762 (B.A.P. 10th Cir. 1998) (14:1; $40,000).

*Attorney's Fees*

In this court's memorandum and order that denied the Defendants' request to dismiss the claims for sanctions, the court held that attorney's fees are recoverable for counsel serving *pro bono*. Case No. 12-12090 at ECF 58 at pp. 13-14. As stated above, recovery of attorney's fees are appropriate for violations of the discharge injunction. Accordingly, the Plaintiff's counsel may submit a fee statement within 21 days of the entry of this memorandum.

*Injunction*

The Plaintiff also requests an injunction against the Defendants. The court concludes that an injunction is not appropriate under the circumstances.

*PPR*

In the memorandum of decision granting partial summary judgment to the Plaintiff, the court found DE III had violated the discharge injunction, but that the evidence was insufficient to establish liability against PPR. ECF 100. Although the Plaintiff argues that the employees of DE III were also employees of PPR or that PPR should otherwise be liable, she has not produced evidence supporting those assertions.[6] Therefore, PPR cannot be held jointly and severally liable for DE III's actions.

## Conclusion

For the foregoing reasons, the court will enter judgment in favor of the Plaintiff against DE III awarding $2,080 in compensatory damages and $25,000 in punitive damages, and will enter judgment in favor of PPR dismissing the complaint against it. Plaintiff's counsel shall have

---

[6] The Plaintiff's motion for summary judgment, ECF 84, states that the Defendants have produced an employment and confidentiality agreement for Kathleen Dougherty indicating that Ms. Dougherty was employed by PPR LLC. ECF 84 at p. 16. However, the evidence does not support any assertion that Ms. Dougherty was engaged in the actions found to have violated the discharge injunction in this case—the attempt to coerce the Plaintiff into reaffirming the discharged debt.

21 days to file an application for fees and expenses, and DE III shall have 21 days thereafter to file an opposition to the application.

cc:     All Parties
        All Counsel

**End of Memorandum of Decision**