Entered: September 30th, 2019
Signed: September 30th, 2019



THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| | | |
|---|---|---|
| In re: | * | Case No.  12-12090-TJC |
| Maria L. Mejia | * | Chapter  7 |
| Debtor | * | |
| * * * * * * * | | |
| Maria L. Mejia | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.  13-00501 |
| Partners for Payment Relief LLC, *et al.* | * | |
| Defendants | * | |
| * * * * * * * * * * * * * * | | |

## MEMORANDUM OF DECISION

Before the court is Plaintiff Maria L. Mejia's motion for award of attorneys' fees and costs (the "Application") and the opposition filed by defendants Partners for Payment Relief LLC ("PPR") and Partners for Payment Relief DE III LLC ("DE III") (collectively, the "Defendants"). ECF 156, 160. For the reasons set forth herein, the Application will be granted in part and Ms. Mejia will be awarded fees in the amount of $387,732 and costs in the amount of $15,780.

**Factual Background**

1

On February 8, 2012 the debtor, Maria L. Mejia, filed the instant Chapter 7 bankruptcy petition. She received a discharge on May 16, 2012, and the case was closed May 22, 2012. ECF 18, 20 (Case 12-12090). On August 20, 2013, the debtor filed a Motion to Reopen Chapter 7 Proceedings and for Contempt Sanctions Under 11 U.S.C. §105(a) and §524(a), (the "Motion to Reopen"), along with an Emergency Motion for Temporary Restraining Order and Order to Show Cause. ECF 21, 22 (Case 12-12090). These motions alleged that the Defendants sought to coerce Ms. Mejia into paying her discharged loan in violation of the discharge injunction of 11 U.S.C. §524(a) by acquiring a valueless, underwater, discharged second deed of trust loan on her residence, foreclosing on the home, and then requiring her to agree to repay the loan or she would be evicted.

The court held a hearing on these motions on August 21, 2013, and on August 23, 2013, issued a Temporary Restraining Order ("TRO"), among other orders. ECF 33 (Case 12-12090).[1] The TRO enjoined the Defendants from seeking to evict Ms. Mejia or attempting to collect on the debt. *Id*. Soon thereafter, the Defendants agreed to reconvey title of the property to Ms. Mejia, and to forgo any effort to collect the underlying debt. The court thus dissolved the TRO on October 2, 2013. ECF 51 (Case 12-12090).

In the meantime, on August 28, 2013, Ms. Mejia brought an adversary proceeding against the Defendants seeking reconveyance to her of the residence and asking for compensatory damages, punitive damages, emotional distress damages, and attorneys' fees and costs, under the same allegations in which the Motion to Reopen was filed (the "Complaint" or "Adversary Proceeding"). ECF 1. On request of Ms. Mejia, the court issued an order consolidating the

---

[1] *See also*, ECF 28 and 32 (Case 12-12090) (granting the request to reopen the case and entering a scheduling order).

Adversary Proceeding and Ms. Mejia's contested motion seeking contempt sanctions. ECF 54 (Case 12-12090).

Although the reconveyance of the residence resolved the substantial dispute between the parties, Ms. Mejia's claims for punitive damages, emotional distress damages, and attorneys' fees and costs remained. The Defendants sought dismissal of these remaining claims. The court held a hearing on the motion on November 21, 2013, and issued a Memorandum and Order on December 16, 2013, narrowing the remaining issues and determining:

- Ms. Mejia had stated a claim for contempt for violation of the discharge injunction.

- Ms. Mejia was not entitled to emotional distress damages on the record before the court, the claim for emotional distress damages was dismissed.

- Ms. Mejia was not barred from recovering punitive damages or attorneys' fees upon a proper showing.

ECF 58 (Case 12-12090).

The parties conducted substantial discovery and engaged in numerous discovery disputes. On March 6, 2015, Ms. Mejia filed an Emergency Motion to Compel Discovery and for the Imposition of Sanctions against the Defendants. ECF 79. This motion was opposed by Defendants. ECF 83. During this time Ms. Mejia also sought leave to file an amended complaint via motion filed March 20, 2015, seeking to add six additional defendants to the action. ECF 80. The Defendants also opposed the motion. ECF 87. These matters were set to be heard by the court with the cross-motions for summary judgment on May 21, 2015. However, the hearing on Ms. Mejia's motion to compel and motion for leave to file an amended complaint, and the oppositions thereto, were continued, and the scheduling order suspended, pending the outcome of the parties' cross-motions for summary judgment. ECF 93.

3

On September 30, 2016, the court granted in part the Plaintiff's motion for summary judgment, finding that DE III violated the discharge injunction by requiring the Plaintiff to reaffirm and reinstate her discharged second deed of trust loan as a condition to remain in her home after DE III foreclosed. ECF 100 and 101. The court denied the remaining relief requested by the Plaintiff and denied the Defendants' cross-motions for summary judgment.

Thereafter, the court held status/scheduling conferences on October 27, 2016, and December 21, 2016, concerning the outstanding motions and remaining counts of the complaint. ECF 106, 113. A telephonic bench ruling was held on December 29, 2016 and the court subsequently entered orders on the outstanding motions. ECF 114. On January 9, 2017, an Order granting Ms. Mejia's motion to compel was entered, the court concluded that the "Defendants improperly asserted the attorney client privilege during some of the questions at the deposition of Cindy Diamond, Esq." ECF 119. The order denied the motion to compel in all other respects. *Id.* On January 9, 2017, the court granted in part Ms. Mejia's motion to amend complaint, allowing her to add one additional defendant. ECF 120. The motion to amend the complaint was denied as to all other parties Ms. Mejia sought to add to the action. *Id.*

Subsequently, the court held a status conference on March 21, 2017, and set a scheduling order with a trial set for June 22-23, 2017. ECF 130. In preparation for trial, the parties filed their Exhibit and Witness Lists, Deposition Designations and Counter-Designations. ECF 134, 138. The Defendants objected to Ms. Mejia's designations. ECF 136. The parties then each submitted pretrial memoranda on June 5, 2017. ECF 141 and 142. Pursuant to her memoranda, Ms. Mejia sought actual damages in the amount of $2,082 and punitive damages in the amount of $500,000.

Trial was held on June 22, 2017, where the court also heard the designation dispute (*see* ECF 136) and took all matters under advisement.  During the trial, the court requested additional designations from the parties and both parties filed their additional designations on August 24, 2017.  ECF 145 and 148.  The court entered its Order and Memorandum of Decision on June 14, 2018.  ECF 152 and 153.  The court concluded that Ms. Mejia had not established any further violations of the discharge injunction were committed by the Defendants,[2] and awarded Ms. Mejia $2,080 in compensatory damages and $25,000 in punitive damages, plus attorneys' fees to be determined.

Ms. Mejia subsequently filed the Application, which is opposed by the Defendants.  ECF 156 and 160.  Ms. Mejia has also now filed a Motion to File Reply Memorandum, Supplemental Affidavit and Reply Memorandum to Defendants' Opposition.  ECF 163.

## Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. §§1334 and 157(b) and Local Rule 402 of the United States District Court for the District of Maryland.  The court has authority to enter final judgment in this matter under 28 U.S.C. §157(b)(2) and consistent with the standards of *Stern v. Marshall*, 564 U.S. 462 (2011).

## Analysis

Although the American Rule generally applies to attorneys' fee requests in federal court, requiring parties to each bear their own costs of litigation, there are exceptions.  *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975).  Exceptions to the American Rule include fee shifting statutes and the court's ability to assess fees against a party for willful violations of the court's orders.  There is no statutory provision for the award of fees for a

---

[2] Beyond those already determined in the Order Granting Summary Judgment to Plaintiff.  *See* ECF 100 and 101.

5

violation of the discharge injunction under 11 U.S.C. §524, but it is well established that a bankruptcy court may assess fees and costs under 11 U.S.C. §105(a) for such a violation. *See Burd v. Walters*, 868 F.2d 665 (4th Cir. 1989). *See also*, ECF 58 at 13-14 (Case 12-12090).

The court previously determined that DE III acted willfully, finding "there can be no question that DE III went well beyond a mere willful violation of the discharge injunction." ECF 152 at 11. As a result of the willful violation of §524 the court determined $25,000 to be an appropriate punitive damage award, determining that "DE III's conduct in this case was especially egregious." *Id.* at 13. The court also determined that "recovery of attorney fees are appropriate for violations of the discharge injunction." *Id.* at 16.

It is well established, and the parties have agreed, that fee requests are analyzed using the twelve "lodestar" factors. These factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) (adopting the factors of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)). Fourth Circuit precedent then requires the court to subtract fees "for hours spent on unsuccessful claims unrelated to successful one" and "then award some percentage of the remaining amount, depending on the degree of

6

success enjoyed by the plaintiff." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008) (quoting *Johnson v. City of Aiken*, 278 F.2d 333, 337 (4th Cir. 2002)).

      The court is also guided by its own Local Rules for Bankruptcy Procedure, Appendix D "Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland," (the "USBC Compensation Guidelines"). The USBC Compensation Guidelines provide the format for a fee application, how the time and services shall be described, how a reimbursement of disbursements and expenses is to be sought, and what services are and are not reimbursable. Perhaps most importantly, the USBC Compensation Guidelines require every fee application to contain a *Johnson* lodestar analysis and requires the court to consider this analysis, along with "the nature, the extent, and the value of the services rendered." Local Bankr. R., App. D at 178 (Bankr. D. Md. April 1, 2019). While the instant case is not a fee petition in the traditional sense, such as where estate professionals seek compensation pursuant to 11 U.S.C. §§327, 328, 330 and 331, the court nonetheless finds guidance in the USBC Compensation Guidelines as they align with Fourth Circuit precedent.

      Further guidance is taken from the Local Rules of the United States District Court for the District of Maryland Appendix B "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases," (the "USDC Compensation Guidelines"). These guidelines, though similar to the USBC Compensation Guidelines, are more expansive and detailed, providing guidelines for non-compensable time including limits on travel, hourly rate and reimbursable expense guidance. Local Dist. R., App. B (D. Md. Dec. 1, 2018).

      The Bankruptcy Code also requires this court to review all fee requests for reasonableness. Reasonableness is not only a concept peppered throughout both the USDC and USBC Compensation Guidelines, but 11 U.S.C. §329(b) provides that the court may cancel any

agreement for compensation that "exceeds the reasonable value of any such services . . . " for an attorney representing the debtor in connection with any bankruptcy case. Likewise, Fed. R. Bankr. P. 2017 provides the court with authority to determine the reasonableness of fees "for services in any way related to the case." Courts recognize that "reasonableness" of an overall fee is a calculation of the reasonable hourly rate charged multiplied by the reasonable number of hours expended. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

The parties agree that the hourly rates set forth in the Application are reasonable, that Ms. Mejia's counsel was competent and diligently represented her interests, and that the timesheets submitted with the Application are true and accurate. The parties' analyses diverge after these concessions. Ms. Mejia would have the court follow a strict, formulaic approach to the fee award, arguing this court has little ability to stray from the fees requested once she has established the 12 lodestar factors. DE III would have the court significantly reduce the fee award based on a lack of "billing judgment," "proportionality," and "reasonableness." ECF 160.

Since the parties agree that the requested hourly rates are reasonable,[3] the first part of the reasonableness multiplier is established as follows:

| *Professional* | *Discounted Hourly Rate* |
|---|---|
| Tom Jerman, Esq. | $475/hour |
| Heidi Gunst, Esq. | $350/hour |
| Dana Robinson (paralegal) | $150/hour |

Of the 12 lodestar factors set forth in *Johnson*, the reasonable hourly rate subsumes five of these factors to include: skill, opportunity cost, customary fee, expectations and experience/reputation of the attorney.

---

[3] In submitting the Application, Ms. Mejia's counsel has discounted the normal hourly billing rates for the professionals who have billed time in this case to align the hourly rates with the USDC Compensation Guidelines.

8

The second part of the reasonableness multiplier, the reasonable number of hours, is the crux of the current controversy.  Ms. Mejia's position that this court must take a formulaic approach to the lodestar analysis and cannot deviate therefrom is inconsistent with Fourth Circuit precedent as established in *Grissom*.

The Defendants' position is that the fees and costs should be reduced based on billing judgment, proportionality, and reasonableness and that, as a result, this court should reduce Ms. Mejia's fees to $36,139.52 and costs to $4,515.  The Defendants' argument as to billing judgment is unjustified.  "The fee application must indicate the exercise of billing judgment by disclosing the number of hours "written off" of the requested fee." *In re Leonard Jed Co.*, 118 B.R. 339, 347 (Bankr. D.Md. 1990).  Ms. Mejia has done just that within the Application. "[C]ounsel has excluded all time by attorneys or paralegals other than the three who performed the vast majority of work.  The practical effect of this is to reduce the number of hours . . . by more than 150 hours . . . and more than $70,000 in fees at Jones Day's regular rates . . .."  ECF 156 at 7.  It is the Defendants' position as to reasonableness and proportionality that this court believes is well-founded.

The Defendants provide the court with a table of proposed hour allocations to various activities such as "complaint, written discovery, document review, deposition, summary judgment, damages hearing."  ECF 160 at 22.  This allocation argument is flawed for several reasons, not the least of which is the lack of factual and/or legal basis supporting an otherwise arbitrary allocation.  The argument also assumes it was unnecessary to incur costs associated with legal research on any of the issues presented, that Ms. Mejia would incur no travel charges, copying charges and postage, and assumes that it was unreasonable for Ms. Mejia to incur any fees in the preparation and prosecution of the Application.  Additionally, the court has no way of

knowing whether the Defendants are allowing Ms. Mejia fees associated with meetings between herself and her attorneys, conferences between opposing counsel, pretrial conferences, exhibit and witness preparation in anticipation of the damages hearing.  Importantly, the chart put forth by the Defendants also does not allocate any fees for the defense of the Defendants' Motions to Dismiss Adversary (ECF 14, 29), which if not defended, would have resulted in the dismissal of the case and would not have allowed Ms. Mejia to proceed to the damages stage of a trial.

For purposes of this memorandum the court will address the Application in three temporal sections.  First is the time period from case development until the court dissolved the TRO on October 2, 2013.  During this time, Ms. Mejia's counsel developed the case, filed the Motion to Reopen and for contempt, filed the adversary proceeding, and obtained the TRO.  By October 2, 2013, Ms. Mejia received her real estate back free and clear of any *in rem* claim remaining from the deed of trust or any other claim of Defendants.  Second is the time period between court's dissolution of the TRO on October 2, 2013, and the court's order limiting the remaining issues and setting the posture for the remainder of this case.  This order was issued December 16, 2013.  At that point the court limited the remaining litigation to punitive damages and attorneys' fees, having found that emotional distress damages were unavailable to the Plaintiff.  The final time period the court will address are the fees and costs incurred after December 16, 2013.  Fees and expenses in this final time period will be addressed and awarded by subcategory consistent with the Application, as more fully explained below.

### Period 1: August 5, 2013, through October 2, 2013

During this time period counsel developed his case theory, researched legal issues, prepared and filed the Motion to Reopen and for Sanctions, prepared and filed the Complaint, reviewed and analyzed the Defendants' opposition to the Plaintiff's motions and initiated

discovery.  Counsel successfully obtained the TRO preventing the Defendants from pursuing eviction of Ms. Mejia or taking any similar action.  As of October 2, 2013, the TRO was dissolved because counsel had obtained a substantial, if not primary, benefit on Ms. Mejia's claims: the reconveyance of the real estate to Ms. Mejia and the cancellation of any deed of trust interest in the property or any claim the Defendants may have against the property.

The amount sought by counsel for these tasks is $106,993.75.  This amount is a 36.2% write-down from the $167,653.50 actually billed by counsel.  The court determines these fees to be reasonable and necessary, and that the billing adjustment is a proper exercise of billing discretion.  The costs incurred by counsel during this time period total $6,798.20 and include court fees, research, service of process, court reporters and case consultants/experts.  Counsel will be awarded 100% of the costs incurred.

### Period 2: October 3, 2013, through December 16, 2013

During this time period counsel continued to develop the case theory, filed a reply brief to the Defendants' opposition to the Plaintiff's sanctions motion, opposed the Defendants' motion to dismiss complaint and prepared an amended adversary proceeding complaint.  The parties briefed and argued at a hearing whether the case should be dismissed because, among other reasons, the Defendants returned the real estate to Ms. Mejia.  On December 16, 2013, the court issued a Memorandum and Order concluding that debtor was not entitled to emotional distress damages, and dismissing that claim, but allowing debtor to pursue a claim for punitive damages or attorneys' fees.  ECF 58, Case No. 12-12090.

The amount sought by counsel for these tasks is $89,781.  This amount is a 36% write down from the $140,436 actually billed by counsel.  The fees include Ms. Mejia's pursuit of emotional distress damages, and this court determined that such damages are not available under

Fourth Circuit precedent. While Ms. Mejia certainly could assert and preserve the claim for appeal, in this court's view, the Fourth Circuit precedent binding on this court was clear that this court could not award such damages. Ms. Mejia's efforts to convince this court to rule contrary to the Fourth Circuit precedent was not time well spent. Therefore, the court will make an adjustment for the fees.

The court determines that fees in the amount of $65,000 for the services performed during this period are reasonable and necessary in light of the services preformed and results obtained. The costs incurred by counsel during this time period total $670 for court reporter fees. Counsel will be awarded 100% of the costs incurred.

### Period 3: December 17, 2013, to Present Day

During this period counsel accrued $1,011,390 in fees, which he has written down to $538,939.25, and $14,661.19 in expenses.

After December 16, 2013, litigation was limited to punitive damages and attorneys' fees. Plaintiff was ultimately awarded $25,000 in punitive damages and $2,080 in compensatory damages. In the context of a discharge violation, an award of attorneys' fees is part of the sanctions imposed upon the violating creditor. *See In re Cherry*, 247 B.R. 176 (Bankr. E.D. Va. 2000). It is therefore reasonable to consider the proportionality of the fee to the damages awarded as a significant factor of reasonableness when determining a fee award. *See In re Seaton*, 462 B.R. 582 (Bankr. E.D. Va. 2011); *In re Charity*, 2017 WL 3580173 (Bankr. E.D. Va. 2017). In addition to proportionality, the court must consider the lodestar analysis and the reasonableness of the fees requested.

The fees accrued are addressed by the seventeen subcategories provided by counsel in the fee petition.

1. **Case Development and Administration**

Here, counsel accrued fees of $13,992.50, of which an award of $8,588.75 is requested. The time spent in this category includes conferences with the National Consumer Law Center, damages research, scheduling order review, and status conference preparation and attendance. It appears from the time entries provided that much of the time spent in this category after December 2013 was spent in the first half of 2014 and counsel did not belabor this category late into the case. The court will award 100% of the fees requested in this subcategory as reasonable and necessary, in the amount of $8,588.75.

2. **Prepare Opposition to Second Motion to Dismiss and Summary Judgment (ECF 22) on Amended Complaint**

Here, counsel accrued fees of $23,568.75, of which an award of $14,006.25 is requested. The time spent is entirely on pleading drafting and hearing attendance. Plaintiff was unsuccessful in opposing the Defendants' motion to dismiss and a dismissal was granted without prejudice. ECF 25. The court recognizes that leaving the motion undefended could have resulted in a dismissal of the case and would not have allowed Ms. Mejia to proceed to the damages stage of a trial. As a result, the court finds that a reasonable, necessary and proportional fee award to the results achieved is $7,003.

3. **Prepare Discovery Requests and for Discovery Conference to Force Discovery While Motion to Dismiss and Summary Judgment Pending (12/17/13 to 02/26/14)**

Counsel originally allocated time here for the period of September 30, 2013, through February 26, 2014. Since the court has broken down the Application into different time periods, only the time accrued in this category after December 17, 2013, will be addressed here, amounting to $12,700, for which an award of $7,443.75 is requested. The time accrued between September 30, 2013, and December 16, 2013, is addressed within Period 1 and Period 2 above.

13

During this period, fees were accrued entirely on discovery issues.  Plaintiff filed a six-page Request for Discovery Conference requesting discovery from all the Defendants.  ECF 32.  The court ordered that the Defendants comply with discovery and continued to stay discovery as to certain individuals.  ECF 37.

Plaintiff's Request for Discovery Conference did not contain a prayer for relief requesting attorneys' fees and costs.  The fees at issue in this category are not fees otherwise associated with the alleged 11 U.S.C. §524 violation but are instead fees sought pursuant to Fed. R. Civ. P. 37(a)(5) ("Rule 37").  Plaintiff did not pursue an award of these fees under Rule 37 at the time and therefore no fees are awarded in this subcategory.

### 4. Motion to Compel Discovery After Court Ordered Responses (04/04/14 to 04/29/14)

During this period, fees were accrued reviewing discovery, preparing an outline of discovery deficiencies, sending a deficiency letter, researching and drafting a motion to compel.  There was no motion filed during this time period.  Counsel accrued $18,093.25 in fees, of which an award of $10,800 is requested.

There is no evidence in the court record of a motion to compel or outstanding discovery dispute for the time period allocated by the fee petition.  Regardless, as explained above, the fees at issue in this category are not fees otherwise associated with the alleged 11 U.S.C. §524 violation but instead are fees sought pursuant to Rule 37.  Plaintiff did not pursue an award of these fees under Rule 37 at the time and therefore no fees are awarded in this subcategory.

### 5. Prepare Initial Disclosures (07/15/14 to 07/24/14)

During this period, fees were accrued drafting and reviewing the Plaintiff's initial disclosures.  Counsel accrued $8,843.50 in fees, of which an award of $5,131.25 is requested.  In preparation of a trial centered solely on punitive damages and attorneys' fees, the court finds this

fee request to be unreasonable and disproportionate to the result achieved. As a result, the court finds that a reasonable, necessary and proportional fee to the results achieved is $2,565 for this subcategory.

### 6. Prepare Plaintiff's Opposition to Motion for Protective Order and Plaintiff's Motion to Compel Discovery (07/01/14 to 10/31/14)

Counsel accrued fees of $131,762 here, for which an award of $74,324.75 is requested. Counsel spent time drafting a motion to compel (ECF 55), opposing a motion for protective order (ECF 52 and 56), researching discovery issues, and preparing and attending argument on the motions. Each party was partially successful in their motion, and the court granted each motion in part and limited discovery.

Plaintiff's motion to compel did not contain a prayer for relief requesting attorneys' fees and costs, nor did the proposed order. The fees at issue in this category are not fees otherwise associated with the alleged 11 U.S.C. §524 violation but are instead fees sought pursuant to Rule 37. As stated in the bench ruling resolving the Plaintiff's motion to compel, the Plaintiff's requested discovery was "very broad and very far reaching." The court accepted the Defendants' proposed limited discovery plan and entered an order accordingly. Under Rule 37(a)(5)(A)(ii), the "opposing party's nondisclosure . . . was substantially justified" and as such, no fees are awarded in this subcategory.

### 7. Negotiate Protective Order, Revise Initial Disclosures

Counsel accrued fees of $7,005.75 in this category, for which an award of $3,937.50 is requested. All time was spent negotiating discovery issues and protective order terms will be disallowed for the reasons set forth in subcategory 4 above. Additionally, the court finds that the fees awarded for the preparation of the Plaintiff's initial disclosures in subcategory 5 are the

reasonable, necessary and proportional fee to the results achieved and therefore, no additional fees will be awarded for revising the disclosures. No fees are awarded in this subcategory.

### 8. Prepare Response to Written Discovery Requests by the Defendants (04/28/14 to 06/26/14)

Counsel accrued fees of $50,980.25, of which an award of $29,513.50 is requested. Counsel spent most of the time in this category drafting responses to discovery from the Defendants, with additional time negotiating discovery issues. Based on the time entries in this subcategory, the court will disallow $1,350 in fees for time spent on "research: punitive damages," which appears to be irrelevant to written discovery requests. Additionally, the court will disallow $10,919.75 in fees accrued on corresponding with opposing counsel and holding discovery conferences, pursuant to its prior explanation of Rule 37 under subcategory four. Fees are awarded in the amount of $17,243.75 in this subcategory.

### 9. Review Supplemental Document Production by the Defendants (12/10/14 to 02/11/15)

Fees total $67,181.25, of which an award of $37,956.25 is requested. Counsel reviewed documents and videos and spent time drafting deposition outlines.

Although counsel took seven depositions of individuals related to the Defendants, no depositions were introduced at trial. The time and effort spent on depositions was of limited value to the Plaintiff, or to the court in rendering its decision. The court finds this fee request to be unreasonable and disproportionate to the result achieved. As a result, the court finds that a reasonable, necessary and proportional fee award to the results achieved is $19,118 for this subcategory. The court determined this fee by disallowing all associate attorney time spent in this subcategory and only awarding the fees accrued by Mr. Jerman.

### 10. Prepare for and Take Cruz, Dougherty, Faust, Sweeney, Paulus, Van Horn and Diamond Depositions (08/06/14 to 02/25/15)

Fees accrued in this category total $193,143.75, of which an award of $81,578.25 is requested. Counsel prepared for, noticed, traveled to and conducted seven depositions. As stated above, the time and effort spent on depositions was of limited value to the Plaintiff, or to the court in rendering its decision. The court finds this fee request to be unreasonable and disproportionate to the result achieved. As a result, the court finds that a reasonable, necessary and proportional fee award to the results achieved is $32,500. This is an allocation of $2,500 for paralegal time, $10,000 for associate time, and $20,000 for partner time. A fee of $32,500 is awarded for this subcategory.

Debtor incurred $13,463.99 in court reporter costs for the depositions taken in the course of these proceedings. The court will award $5,400 in costs.

**11. Prepare for and Attend Mejia Deposition (02/25/15 to 02/27/15)**

Counsel accrued fees totaling $7,200 for the deposition of Ms. Mejia, an award of $4,275 is requested. The court finds this to be a reasonable and necessary request and will award $4,275 in fees for this subcategory.

**12. Prepare Emergency Motion to Compel Discovery and Amend Complaint**

Fees accrued in this category total $87,263, of which an award of $49,484 is requested. Counsel drafted and filed a 32-page Motion to Compel and Memorandum in Support, along with 92 pages of exhibits. The motion was opposed by the Defendants. As the court determined in its telephonic bench ruling on these issues, "I'm not awarding either party any costs for this ruling, as it seems to me that each party prevailed on some points and did not prevail on other points." As a result, no fees will be awarded for the Motion to Compel.

In addition, counsel filed a 69-page Motion for Leave to File an Amended Complaint in an effort to add five additional defendants. Plaintiff prevailed on adding one defendant to the

17

complaint. In this regard, the Plaintiff will be awarded 20% of the fees accrued in this category, attributable to seeking an amended complaint. Fees in the amount of $1,167.50 are awarded for this subcategory.

### 13. Prepare Motion for Summary Judgment on Liability

Fees accrued in this category total $110,913, of which an award of $61,894 is requested. Counsel conferred regarding summary judgment, drafted, researched and filed a motion for summary judgment along with an amended complaint. The motion filed was 64 pages and included 556 pages of exhibits. The motion was granted in part against DE III; the court concluded that DE III violated the discharge injunction.

Plaintiff's motion sought a determination on summary judgment that the Defendants violated the discharge injunction on three legal theories. Plaintiff did not prevail on these points as to any defendant except one, DE III, and only prevailed on one legal theory. To that end, the court finds that a reasonable, necessary and proportional award of attorneys' fees for the result achieved is approximately 30% of the fees accrued, or $18,568.20 for this subcategory.

### 14. Prepare Opposition to the Defendants' Motion for Summary Judgment, Reply in Support of Motion to Compel (03/21/15 to 04/06/15)

Fees accrued in this category total $142,184, of which an award of $80,866 is requested.

The court has already determined that no fees will be awarded in association with the motion to compel. As such, fees requested in this category attributable to the motion to compel will be disallowed in the amount of $38,753.

Although, the Plaintiff was successful in opposing the Defendants' motion for summary judgment, it was due in large part to the cross-motion for summary judgment that was filed and heard by the court at the same hearing. As a result, the court will reduce the remaining fees in

this subcategory to 30% of the fees accrued, using the same justification as subcategory 13, and award a fee of $12,633.90 for this subcategory.

### 15. Prepare for and Attend Pretrial Conference (04/27/17 to 06/15/17)

Fees accrued in this category total $42,080 and counsel requests an award of $25,003. Plaintiff spent $12,605.50 in fees preparing the exhibit and witness list and exhibit binder, and another $9,310 preparing and filing a 16-page pretrial memorandum. At the time of trial, the Plaintiff admitted one exhibit into evidence and called no witnesses. The time and effort spent is disproportionate to the value to the Plaintiff. As a result, the court will reduce the fee and award $9,310 for this subcategory.

### 16. Prepare for and Attend Trial

Fees accrued in this category total $39,600 and counsel requests an award of $23,513. As stated above, at trial, the Plaintiff admitted one exhibit into evidence and called no witnesses. The court will reduce the fee in this subcategory and award $12,000.

### 17. Prepare Fee Petition

Fees accrued in this category total $20,625. The fee petition was extensive and required substantial time. The court is awarding attorneys' fees at approximately 49% of those requested. Accordingly, the court will reduce the fee for the preparation of the Application to 49% of the request and award $10,106.

### Miscellaneous Costs

The Application includes a request for an award of costs in the amount of $27,952.89. Many of these costs are subsumed in the temporal periods already addressed herein. There are however $5,823.50 in miscellaneous costs not otherwise attributable to certain dates. These costs include witness fees, courier services, postage, mileage, duplication charges, research and

travel. The court finds an award of 50% of these costs to be appropriate, or $2,912. Any other request for costs for any time period not otherwise addressed herein is disallowed.

## Conclusion

For the foregoing reasons, the court will award fees in the amount of $387,732 and costs in the amount of $15,780. A separate order will issue.

cc:     All Parties
        All Counsel

## End of Memorandum of Decision